# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| THE ESTATE OF VIVIAN MAIER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. |
| vs. | ) | |
| | ) | |
| JEFFREY GOLDSTEIN, an | ) | |
| individual, VIVIAN MAIER | ) | |
| PRINTS, INC., a Delaware | ) | JURY TRIAL DEMANDED |
| corporation, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## VERIFIED COMPLAINT

1.    This is a copyright and trademark infringement case brought by THE ESTATE OF VIVIAN MAIER ("the Estate") which owns the copyright to all photographs taken by Maier during her lifetime.

2.    Defendants JEFFREY GOLDSTEIN and VIVIAN MAIER PRINTS, INC. (collectively, "Goldstein" or "Defendants") engaged in the copying, public exhibition, and commercial exploitation of the unpublished, copyrighted photographs of Vivian Maier, a Chicago photographer who died in 2008 and who has achieved worldwide posthumous recognition and acclaim.  Defendants have also falsely marketed and promoted their infringing activities as "officially sanctioned" by Vivian Maier and/or her estate in order to cause confusion among the public and to illicitly profit from that confusion.  Defendants' conduct has caused significant injury to the Estate and has resulted in unlawful profits to Defendants.

3.    The Estate seeks an injunction against Defendants' further infringement, impoundment of Defendants' instruments of infringement, seizure and forfeiture of all infringing

1

copies in Defendants' possession, custody, or control, and all monetary remedies available under law, including but not limited to the Estate's damages and Defendants' profits.

## SUMMARY OF THE ALLEGATIONS

4.     The Estate seeks injunctive relief, lost profits, damages, costs, and reasonable attorneys' fees for acts of copyright infringement, trademark infringement, false designation of origin, unfair competition, unfair trade practices, and cybersquatting under the Copyright Act, 17 U.S.C. §§101 et seq., the Lanham Act, 15 U.S.C. §§1051 et seq., and the laws of the State of Illinois, based on, among other acts, Defendants' unlawful copying, distribution, sale, and public exhibition of the Estate's copyrighted works, Defendants' use of the Estate's registered mark VIVIAN MAIER, and Defendants' false portrayal of their activities as officially endorsed or connected with Vivian Maier or her estate.

5.     This Complaint is brought to seek redress against Defendants for their large-scale copyright infringement operations and deceptive acts that have misappropriated the Estate's copyrighted works, trademark, and intellectual property and intentionally or recklessly injured the Estate's reputation in violation of state and federal law.  Defendants' misconduct includes the wrongful registration and misuse of the "Vivian Maier Prints, Inc." trade name, and the use of the domain name and website located at "vivianmaierprints.com" to promote Defendants' unauthorized reproductions ("Defendants' Website").

6.     Defendants' infringing activities deceived the public and caused injury to the Estate, with the goal of illegally profiting from the unauthorized exploitation of the Estate's copyrighted material and establishing a false and misleading association between Defendants and the Estate.  By using the Estate's trademark and personal name to deceive consumers about the

legitimacy and authorization of the products they offered, Defendants engaged in blatant deception.

7.     Defendants' deceptive acts have allowed Defendants to illegally profit from the Estate's intellectual property and have caused significant injury to the Estate, including monetary damages and reputational harm to the Estate's valuable trademark and identity.  Defendants' conduct has also deprived the Estate of control over the manner in which the Estate's works of authorship would be introduced to the public, curated, published, and commercialized, since none of the works that Defendants have infringed were ever published by Maier or her Estate.

## JURISDICTION AND VENUE

8.     This Court has federal question jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

9.     The claims asserted herein arose in this judicial district and all arise out of transactions that took place in this judicial district.

10.     Venue in this judicial district is proper under 28 U.S.C. § 1391(b) because this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred.

## PARTIES

11.     David A. Epstein is the Cook County Public Administrator.  Pursuant to an order issued by the Circuit Court of Cook County (Probate Division), dated July 1, 2014, Epstein is the Supervised Administrator of the Estate of Vivian Maier and is empowered to bring legal actions to protect the assets of the Estate, including its copyright interests.  755 ILL. COMP. STAT. 5/13-4.

12.     The Estate is informed and believes and thereon alleges that Vivian Maier Prints, Inc. was organized and existing under the laws of the State of Delaware and authorized to do business in the state of Illinois until 2016.  The registered agent of Vivian Maier Prints, Inc. in

Illinois was Gerard P. Gangloff, with an address of 8400 Callie Ave., Suite 511, Morton Grove, Illinois 60053.

13.     On information and belief, Jeffrey Goldstein is or was the sole shareholder, officer, and principal of Vivian Maier Prints, Inc.  On information and belief, Jeffrey Goldstein's business address from which he operated Vivian Maier Prints, Inc. is 7505 N. Oakley Ave., Chicago, Illinois 60645.  On information and belief, Jeffrey Goldstein's home address is 1901 Kirkwood Dr., Durham, NC 27705.

## THE MAIER WORKS

14.     Vivian Maier was a photographer who spent most of her life living in the Chicago, Illinois area as a nanny.

15.     Maier's photography was never professionally shown or exploited during her lifetime.  In fact, the vast majority of the photographs she took were never developed while she was alive.

16.     Maier died intestate on April 21, 2009, in Cook County, Illinois.

17.     Maier's estate includes all the personal and real property, tangible and intangible, vested or contingent, including intellectual property, of Vivian Maier.  The estate is subject to probate and distribution to heirs, known or unknown.

18.     Under Illinois law and the Copyright Act, 17 U.S.C. § 201(d)(1), the Estate holds and owns the copyright in works of authorship created by Maier, including but not limited to photographs (including those embodied in undeveloped rolls of color and black and white film, negatives, prints, and contact sheets), audiovisual works, motion pictures, literary works (including letters and correspondence), sound recordings, and other works of authorship ("Maier Works").

19.     A number of individuals unsuccessfully attempted to establish themselves as Maier's heirs, and thus owners of the copyright in the Maier Works.

20.     On July 1, 2014, the Circuit Court of Cook County (Probate Division) appointed the Cook County Public Administrator (the "Public Administrator") as the Supervised Administrator of the Estate, including the enforcement of intellectual property rights held by the Estate. (See Exhibit A).

21.     To date, the Circuit Court has not determined the identity of Maier's heir(s), and the Public Administrator is currently authorized to act on behalf of the Estate.

22.     The Estate is the owner of the VIVIAN MAIER trademark. The VIVIAN MAIER mark is registered with the U.S. Patent and Trademark Office on the Supplemental Register as Reg. No. 4057824 in connection with "Photographic prints; Photographs; Unmounted and mounted photographs." (See Exhibit B). A use-based application for the VIVIAN MAIER trademark (Serial No. 87390438) on the Principal Register in connection with "art exhibitions," "downloadable electronic images and publications, namely, books and booklets featuring the subject of photography; ebooks featuring the subject of photography; audio-visual works featuring the subject of photography," and "prints and printed materials, namely, books and booklets in the field of photography and photographic images, photographic prints and reproductions" is also pending with the U.S. Patent and Trademark Office. (See Exhibit C).

**GOLDSTEIN'S INFRINGING ACTIVITIES**

23.     Beginning in approximately 2010, Jeffrey Goldstein amassed a series of vintage prints made by Maier. His first purchase was 57 photographs from photography collector Randy Prow. Eventually, Jeffrey Goldstein would acquire approximately 2,000 vintage prints for his collection.

24.     In approximately 2010, Jeffrey Goldstein acquired through a series of transactions approximately 15% of Maier's known black and white negatives and slides, totaling approximately 20,000 images. Most of these images were also purchased from Mr. Prow.

25.     Jeffrey Goldstein also obtained the negatives for approximately 1,700 color negatives, along with nearly 300 rolls of undeveloped film, dozens of motion picture reels, and other Maier-related items.

26.     On October 25, 2010, Jeffrey Goldstein founded Vivian Maier Prints, Inc. as a corporation through which he would exploit the Maier negatives and other copyrighted material he had acquired.

27.     On information and belief, Jeffrey Goldstein chose the name "Vivian Maier Prints, Inc." in order to mislead the public into believing that he was authorized by Maier or her Estate to make or sell prints or otherwise exploit works created by Vivian Maier during her lifetime.

28.     At all times relevant to this Complaint, Goldstein was the sole owner and decision maker of Vivian Maier Prints, Inc. As such, he possessed the right and ability to supervise all of the corporation's activities, and he had a direct financial interest in the infringing activities engaged in by the corporation. Goldstein willfully, knowingly, and personally participated in and directed all of the infringing activities undertaken by Vivian Maier Prints, Inc.

29.     In late 2010 and 2011, Goldstein began to catalog the Maier collection he had purchased. In connection with those activities, he processed undeveloped film he had acquired, and made unauthorized digital copies of Maier Works in his possession.

30.     Also in early 2011, Goldstein started creating unauthorized prints from the negatives he had begun to process.

31.     Starting in approximately March 2011, Goldstein began selling the unauthorized, posthumous prints he was creating of Maier's unpublished photographs for well over $1,000.00 each, and often much higher. On information and belief, these prints were marked with a stamp of Goldstein's signature on the reverse side as a matter of course.

6

32.     In approximately April 2011, Goldstein began to exhibit these unauthorized prints of Maier's unpublished photographs at public exhibitions, including at the Russell Bowman Art Advisory in Chicago.

33.     In order to promote his sale of unauthorized Vivian Maier prints, Goldstein registered the domain name "vivianmaierprints.com," and launched a website at that address in approximately February 2011. The website, featuring a facsimile signature of Vivian Maier and the header "Vivian Maier Prints, Inc.," was designed to give the false impression that it was the "official" Maier website, and was approved, sponsored, or endorsed by Maier or her Estate.

34.     Goldstein posted dozens of images created by Maier on his "vivianmaierprints.com" website without authorization from Maier or her Estate.

35.     In October 2012, Goldstein caused to be published the hardcover book *Vivian Maier: Out of the Shadows*, edited by Richard Cahan and Michael Williams, consisting largely of reproductions of unpublished Maier photographs. Goldstein sold a "special edition" of the *Vivian Maier: Out of the Shadows* book for $850 per copy.

36.     In 2012, Goldstein expanded his enterprise selling unauthorized Vivian Maier prints to galleries outside of Chicago, including the Lumiere Gallery in Atlanta, the Monroe Gallery in Santa Fe, the Basil Hallward Gallery in Portland, Oregon, and the Bi8 Biennale Dell'Immagine in Chicasso, Switzerland.

37.     On information and belief, through the creation, marketing, and sale of these unauthorized copies of the Maier Works, Goldstein began to generate up to $500,000 per year in annual revenue from print sales and other infringing activities.

38.     In 2013, Goldstein continued to organize public exhibitions and sales of Maier's unpublished photography, all without the consent of Maier or her Estate. Goldstein held these unlawful exhibitions in, among other places, California, Oregon, Washington State, and Florida.

39.     On information and belief, Goldstein "licensed" certain Maier images as to which he held the negatives to the British Broadcasting Corporation (BBC), which used them in

7

connection with its 2013 documentary *The Vivian Maier Mystery*. Goldstein had no authority from Maier or her Estate to grant these licenses.

40.     In 2014, Goldstein presented an additional 15 unauthorized exhibitions of Maier's unpublished work throughout the world, including at the Radisson Blu Aqua Hotel in Chicago. On information and belief, during most of these exhibitions, Goldstein offered and sold unauthorized prints of Maier's photography for prices between $2,200 and $4,500.

41.     In October 2014, Goldstein caused to be published the hardcover book *Vivian Maier: A Photographer Found*, also consisting largely of reproductions of unpublished Maier photographs.

42.     Neither Jeffrey Goldstein nor his company ever sought or received permission from Maier or her Estate to reproduce and sell prints of Maier's work, to conduct exhibitions of Maier's work, to publish either *Vivian Maier: Out of the Shadows* or *Vivian Maier: A Photographer Found*, to use Maier's name or identity in the trade name of Goldstein's company, or to make any statements suggesting that Goldstein's enterprise exploiting Maier Works was endorsed by or affiliated with Maier or her Estate.

43.     Throughout his project of infringing the copyrights in Maier's photography, Goldstein was not ignorant of U.S. copyright law and was frequently asked whether he had any legal right to reproduce and to profit from Maier's photographs. On information and belief, Goldstein took the legally baseless position that his efforts to establish a market for Maier's works entitled him to copy, publish, and profit from Maier's copyrighted works.

44.     On August 15, 2014, a Petition was filed with the Cook County Circuit Court for the issuance of a Citation to Discover and/or Recover Assets from Goldstein.

45.     On approximately August 20, 2014, attorneys for the Estate sent Goldstein a letter informing him that they had been retained by the Estate to investigate, among other things, potential infringement of Maier's copyrights. In the letter, Goldstein was put on notice of his

8

obligation to take reasonable steps to preserve and retain all documents related to Maier and the exploitation of her works. (See Exhibit D).

46.     The Circuit Court issued an order granting the Petition on September 4, 2014.

47.     During September and early October 2014, counsel for the Estate had several conversations with Goldstein's attorney concerning the possible claims of the Estate arising out of Goldstein's Maier-related activities and their resolution.

48.     On October 10, 2014, counsel for the Estate sent to Goldstein's counsel a copy of the petition and citation orders that had been issued by the Circuit Court and asked Goldstein's counsel if he would waive service. Counsel responded later that day that he did not have authorization at that time to waive service.

49.     On October 15, 2014, Goldstein's counsel met with counsel for the Estate to discuss the citation as well as a possible resolution of the issues between the parties.

50.     On information and belief, during these negotiations and after the Estate asked his counsel to waive service of process with respect to the petition, Goldstein was engaged in covert negotiations to thwart the citation issued by the Circuit Court and the litigation hold issued by the Estate. At the same time his attorney was engaged in "negotiations" with the Estate, Goldstein was traveling to Canada to seek a purchaser of his collection of black and white negatives.

51.     In approximately December 2014, Defendants sold their entire collection of black and white Maier negatives to the Stephen Bulger Gallery, a fine art gallery located in Toronto, Canada.

52.     Goldstein chose Bulger as a buyer for the negatives because Bulger was outside of the United States and both Goldstein and Bulger believed that transferring the negatives out of the reach of the U.S. and Illinois courts would impede enforcement efforts of the Estate. As explained by Bulger in a January 21, 2015 interview with *Canadian Art* magazine, "the border does complicate things a bit...for Cook County to try to extradite material that's in another country, there's definitely a couple more layers of protection there."

9

53.     It turned out that Goldstein's initial discussions with the Estate after he received notice of the Citation were a ruse.  As he told the Chicago Tribune in an article reported on January 23, 2015: "I'm not going to partner up with Cook County.  I'd cut my wrists first."

54.     Since early 2015, Goldstein failed to provide the Estate with meaningful financial information related to Defendants' exploitation of the Maier Works, notwithstanding orders from the Circuit Court to produce that information.

55.     On February 18, 2015, Goldstein filed a counterclaim against the Estate for "unjust enrichment" based on an argument that his infringing conduct created the value of Maier's copyrights and that he should be entitled to an interest in Maier's works in view of the effort he invested into his counterfeiting enterprise.  Goldstein's lawsuit was dismissed by the Circuit Court in an order dated January 13, 2016.

## CLAIM FOR RELIEF

## COUNT I - COPYRIGHT INFRINGEMENT[1]

56.     The Estate repeats and incorporates by reference the allegations contained in this Complaint as if fully set forth herein.

57.     Vivian Maier is the author of each of the original, unpublished photographs contained in Exhibit E.

58.     Each of the photographs contained in Exhibit E is copyrightable subject matter under the laws of the United States.

---

[1] The works that are contained in Exhibit E and that are the subject of the copyright registration in Exhibit F are all Maier works that have been infringed by Defendants through their unauthorized copying, distribution, public display, and/or use in the creation of derivative works. On information and belief, discovery will reveal many other copyrighted works of Maier that have also been infringed by Defendants.  The Estate intends to seek preliminary injunctive relief to provide it with access to the physical copies in Defendants' possession, most of which are the only known, extant copies of the copyrighted works, in order to facilitate the registration of these works with the Copyright Office and subsequently amend its complaint to the extent necessary to redress Defendants' infringement of these other Maier works.

59.     Pursuant to Illinois law and the Copyright Act, 17 U.S.C. § 201(d)(1), the Estate of Vivian Maier is the valid copyright holder in all works authored by Vivian Maier during her lifetime, including the works depicted in Exhibit E.

60.     The Estate of Vivian Maier is the copyright registrant for each of the photographs contained in Exhibit E.  The copyright registration (Reg. No. VAu001263400) for the photographs is attached as Exhibit F.

61.     Goldstein had access to the photographs in Exhibit E through his purchase of negatives embodying these works in 2010 and thereafter.

62.     After accessing Maier's work, Goldstein wrongfully created copies of the copyrighted Maier photographs without the Estate's consent and engaged in acts of widespread infringement through posting the photographs via online websites, the organization of public exhibitions, the publication of books containing reprints of the photographs, and the creation and sale of prints.

63.     The Estate is informed and believes and thereon alleges that Goldstein further infringed the Estate's copyright by making or causing to be made derivative works from the Maier Works by producing and distributing reproductions without the Estate's permission.  To the extent Goldstein claims that any prints or reproductions he made from negatives containing the Maier Works are derivative works rather than copies, those derivative works are also infringements of the Estate's copyrights.

64.     Defendants' acts of copyright infringement, as alleged above, have caused the Estate to suffer, and to continue to suffer, substantial damage to its business in the form of diversion of trade, loss of income and profits, and a dilution of the value of the Estate's copyrights.

65.     Further, as a direct result of the acts of copyright infringement, Defendants have obtained direct and indirect profits they would not otherwise have realized but for their infringement of the copyrighted Maier Works.  The Estate is entitled to disgorgement of

Defendants' profits directly and indirectly attributable to their infringement of the Maier Works.

66.     Defendants' actions have caused and are likely to cause substantial injury to the public and to the Estate, its business, goodwill, and reputation.

67.     The Estate is entitled to injunctive relief prohibiting Defendants' further infringement, and to recover Defendants' profits associated with the infringement and the Estate's costs.

68.     Defendants' film negatives, plates, copies, and other embodiments of Maier Works from which copies can be reproduced should be impounded and forfeited to the Estate as instruments of infringement, and all infringing copies created by Defendants should be impounded and forfeited to the Estate, under 17 U.S.C. §503.

## COUNT II – EQUITABLE EASEMENT

69.     The Estate repeats and incorporates by reference the allegations contained in Paragraphs 1 through 68 as if set forth fully herein.

70.     The only known, extant copies of many of Vivian Maier's copyrighted works, including but not limited to 1,700 color negatives, slides, and transparencies, are currently owned by and in the possession of Defendants.

71.     The copyright to these works, including the right to reproduce, distribute, publicly exhibit, and license these works, belongs to solely to the Estate.

72.     Defendants have refused to provide the Estate with access to the physical objects in their possession to enable it to exploit its copyright in the Maier Works.

73.     Without access to the physical objects in Defendants' possession, the Estate is deprived of all ability to exercise its valid copyrights in the works embodied therein.

74.     In the alternative to the Estate's claim under COUNT I that these negatives should be impounded and forfeited to the Estate as instruments of infringement under 17 U.S.C. §503, the Estate requests that the Court grant to the Estate an equitable easement against

12

the physical objects embodying the Maier Works in Defendants' possession, custody, or control in order to:

    a.    digitize and/or take other steps to create an alternative master copy of the works authored by Vivian Maier which are currently embodied only in a single copy possessed and/or owned by Defendants;

    b.    declare that the Estate shall return the physical copies owned by Defendants to them within a reasonable period of time, to be determined by the Court;

    c.    declare that the digitized copy and/or alternative master copy, along with all subsequent copies created by the Estate are the sole property of the Estate.

**COUNT III - FEDERAL TRADEMARK INFRINGEMENT (LANHAM ACT § 32)**

75.    The Estate repeats and incorporates by reference the allegations contained in Paragraphs 1 through 74 as if set forth fully herein.

76.    Section 32 of the Lanham Act, 15 U.S.C. § 1114(1)(a), provides in pertinent part that "[a]ny person who shall, without the consent of the registrant — use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant . . . ."

77.    Defendants have offered goods and services using a colorable imitation of the Estate's registered VIVIAN MAIER Mark in connection with Defendants' products, business, and website without the Estate's permission. Such unauthorized use in commerce is likely to cause confusion or mistake or deception among prospective or actual customers and other members of the public, in violation of Section 32 of the Lanham Act.

78.    Defendants' acts of infringement in violation of Section 32 of the Lanham Act are malicious, fraudulent, willful, and deliberate.

79.     Defendants have willfully intended to trade on the recognition of, and has willfully intended to harm the reputation of, the registered VIVIAN MAIER Mark.

80.     Defendants' acts of infringement in violation of Section 32 of the Lanham Act have inflicted and, if not enjoined, will continue to inflict irreparable harm on the Estate. Thus, the Estate has no adequate remedy at law.

81.     Pursuant to 15 U.S.C. § 1117, the Estate is entitled to recover damages in an amount to be determined at trial, including Defendants' profits, losses sustained by the Estate due to Defendants' conduct, and costs of the action. Furthermore, the actions of Defendants were undertaken willfully and with the intention of causing confusion, mistake, or deception, making this an exceptional case entitling the Estate to recover additional treble damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

**COUNT IV - FALSE DESIGNATION OF ORIGIN (LANHAM ACT § 43(a))**

82.     The Estate repeats and incorporates by reference the allegations contained in Paragraphs 1 through 81 as if set forth fully herein.

83.     Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides in pertinent part that "[a]ny person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol . . . . or any false designation of origin . . . which is likely to cause confusion or to cause mistake, or to deceive as to affiliation . . . or as to origin, sponsorship, or approval of goods [or] services . . . shall be liable in a civil action."

84.     Defendants' use of confusingly similar imitations of the Estate's trademark and identity, including Defendants' use of the "Vivian Maier Prints, Inc." trade name and the "vivianmaierprints.com" domain name, has caused confusion, deception, and mistake by creating the false and misleading impression that Defendants' business and services are affiliated, connected, or associated with the Estate and its authorized website, business, and products.

85.     Defendants' actions demonstrate a malicious, intentional, willful, and bad faith intent to trade on the Estate's goodwill and to cause confusion, deception, and mistake by intentionally portraying a non-existent affiliation or relationship between the Estate's and Defendants' businesses, services, and websites, thereby causing significant and irreparable injury to the Estate.

86.     Defendants have willfully intended to trade on the recognition of, and have willfully intended to harm the reputation of, the Estate and its VIVIAN MAIER Mark.

87.     Defendants aforementioned acts constitute false designation of origin and trademark infringement in violation of 15 U.S.C. § 1125(a) (Section 43(a) of the Lanham Act).

88.     Defendants' actions have caused and are likely to cause substantial injury to the public and to the Estate, its business, goodwill, and reputation.

89.     The Estate is entitled to injunctive relief, and to recover Defendants' profits associated with the infringement and the Estate's costs.

### COUNT V - FEDERAL UNFAIR COMPETITION (LANHAM ACT § 43(a))

90.     The Estate repeats and incorporates by reference the allegations contained in Paragraphs 1 through 89 as if set forth fully herein.

91.     Defendants' aforementioned acts constitute unfair competition in violation of 15 U.S.C. § 1125(a) (Section 43(a) of the Lanham Act).

92.     Defendants' actions have caused and are likely to cause substantial injury to the public and to the Estate, its business, goodwill, and reputation.

93.     The Estate is entitled to injunctive relief, and to recover Defendants' profits associated with the infringement, the Estate's costs, and the Estate's reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1116 and 1117.

### COUNT VI – ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT

94.     The Estate repeats and incorporates by reference the allegations contained in Paragraphs 1 through 93 as if set forth fully herein.

95.     Defendants' adoption and use of the trademark "VIVIAN MAIER" and their conduct suggesting to consumers that their activities are or were endorsed, affiliated with, or connected with Vivian Maier or her Estate misrepresent the nature of those goods and services and are likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of Defendants' services and therefore constitutes a violation of the Illinois Consumer Fraud and Deceptive Business Practice Act, 815 ILL. COMP. STAT. 505/1, et seq.

96.     As a result of Defendants' acts, the Estate has suffered, and continues to suffer irreparable injury to its reputation and goodwill.

**COUNT VII - COMMON LAW UNFAIR COMPETITION**

97.     The Estate repeats and incorporates by reference the allegations contained in Paragraphs 1 through 96 as if set forth fully herein.

98.     This claim arises under the common law of the State of Illinois.

99.     Defendants' aforementioned acts constitute unfair competition in violation of Illinois common law.

100.    Defendants have engaged in unfair competition through its reliance on and exploitation of consumer mistake and confusion, and its deliberate efforts to exploit the goodwill represented by the VIVIAN MAIER Mark and the Estate's identity.

101.    As a proximate result of Defendants' actions, the Estate has suffered and will continue to suffer great damage to its business, goodwill, reputation, and profits.

102.    The Estate has no adequate remedy at law.  Unless Defendants are enjoined, the Estate will continue to suffer irreparable harm.

103.    By reason of Defendants' unlawful conduct as alleged above, the Estate has been substantially injured and is entitled to damages and Defendants' profits attributable to Defendants' infringement, which are presently indeterminate, and the costs of this action.

## COUNT VIII - COMMON LAW TRADEMARK INFRINGEMENT

104.    The Estate repeats and incorporates by reference the allegations contained in Paragraphs 1 through 103 as if set forth fully herein.

105.    This claim arises under the common law of the State of Illinois.

106.    Defendants' aforementioned acts constitute trademark infringement in violation of Illinois common law.

107.    Defendants have used confusingly similar imitations of the VIVIAN MAIER Mark and identity with the willful and calculated purpose of harming or trading on the Estate's goodwill and reputation, and in a manner calculated to imply false sponsorship of or approval by the Estate for the purpose of misleading and deceiving the public.

108.    Defendants' conduct constitutes infringement of the Estate's common law rights to its mark and has damaged and will continue to irreparably damage the Estate's goodwill and reputation unless enjoined by this Court.

## COUNT IX - CYBERSQUATTING (LANHAM ACT § 43(d))

109.    The Estate repeats and incorporates by reference the allegations contained in Paragraphs 1 through 108 as if set forth fully herein.

110.    Defendants have registered, trafficked in, and are using a domain name, "vivianmaierprints.com," that includes, and is virtually identical or confusingly similar to, the Estate's VIVIAN MAIER Mark.  Defendants' domain name encompasses the Estate's identity and VIVIAN MAIER Mark in its entirety, along with the generic wording "prints."  The domain name is also confusingly similar to the Estate's bona fide "vivianmaier.com" domain name, which is registered to and is operated by its authorized agent.  The VIVIAN MAIER

17

name and identity were distinctive and known to Defendants at the time they registered and/or acquired the "vivianmaierprints.com" domain name.

111.    Defendants had and continue to have a bad faith intent to profit from the "vivianmaierprints.com" domain name. Defendants have no valid trademark rights in the "VIVIAN MAIER" name and mark or any other mark incorporating the element "Vivian Maier." Instead, Defendants have used the domain name to divert actual or potential customers away from the Estate's website to Defendants' own website at the "vivianmaierprints.com" location for the purpose of causing confusion and exploiting and harming the goodwill of the Estate's Marks, all for Defendants' own commercial gain.

112.    Defendants' aforementioned acts constitute cybersquatting in violation of 15 U.S.C. § 1125(d) (Section 43(d) of the Lanham Act).

113.    As a result of Defendants' cybersquatting, the Estate has suffered detriment to its business, goodwill, reputation, and profits, all to its damage in an amount yet to be determined, and subject to a treble damages award pursuant to 15 U.S.C. § 1117. In addition, the Estate is informed and believes that Defendants have derived and will continue to derive unlawful gains and profits as a result of its unlawful acts. Alternatively, the Estate is entitled to recover statutory damages.

114.    This case is an exceptional case and the Estate is entitled to recover its attorneys' fees pursuant to 15 U.S.C. § 1117.

115.    The Estate is entitled to a transfer of the "vivianmaierprints.com" domain name.

116.    Alternatively, the Court should order Defendants to forfeit the domain name and order the domain name registration to be cancelled.

117.    If the aforesaid acts are permitted to continue, further loss and damage and irreparable injury will be sustained by the Estate, for which the Estate has no adequate remedy at law. Injunctive relief against such continued conduct by Defendants should be granted pursuant to this Court's authority under 15 U.S.C. §§ 1116 and 1118.

## PRAYER FOR RELIEF

WHEREFORE, Maier prays for judgment as follows:

1.  That Defendants, and each of them, and their respective agents and servants be enjoined from infringing the Estate's copyrights in any manner;

2.  That the Court order the impoundment, seizure, and forfeiture to the Estate of all infringing copies of Maier Works in Defendants' possession, custody, or control;

3.  That the Court order the impoundment, seizure, and forfeiture to the Estate of all plates, film negatives, masters, and other articles by means of which infringing copies in violation of the exclusive rights of the Estate, the copyright owner, may be reproduced;

4.  That Defendants, and each of them, be permanently enjoined from using VIVIAN MAIER or any variant thereof as a trademark, trade name, corporate identity, domain name, or indicia of origin;

5.  That Defendants, and each of them, be permanently enjoined from engaging in any conduct which will cause, or is likely to cause, confusion, mistake, deception, or misunderstanding as to source, or confusion as to the affiliation, connection, association, origin, sponsorship, or approval of Defendants' business, services, website or other activities with the Estate or its trademarks;

6.  That Defendants, and each of them, be ordered to transfer to the Estate the "vivianmaierprints.com" domain name, or in the alternative, be ordered to forfeit the domain name or order the existing domain name registration to be cancelled;

7.  That the Estate be awarded either (a) all profits of Defendants, and each of them, plus all losses of Maier, attributable to their infringement, the exact sum to be proven at the time of trial, or (b) statutory damages, as elected by the Estate prior to final judgment;

8.  That Defendants, and each of them, account to the Estate for their profits and any damages sustained by Maier arising from the foregoing acts of infringement;

9.  That the Estate be awarded enhanced damages and the Estate's reasonable attorneys' fees;

10. That the Defendants make available to the Estate all information relating to any Maier Works that they hold or have held and submit to an accounting of all assets, income, and profits related thereto;

11. That the Defendants disgorge any profits earned by their tortious activities;

12. That the Estate be awarded punitive damages in an amount to be established at trial;

13. That the Estate be awarded pre-judgment interest as allowed by law;

14. That the Estate be awarded the costs of this action; and

15. That the Estate be awarded such further legal and equitable relief as the Court deems proper.

## JURY DEMAND

The Estate demands a jury trial on all the issues so triable.

April 20, 2017

BY:  THE ESTATE OF VIVIAN MAIER

Its counsel:

/s/James E. Griffith
James E. Griffith
Gregory J. Chinlund
Julianne M. Hartzell
Marshall, Gerstein & Borun LLP
233 South Wacker Drive
6300 Willis Tower
Chicago, IL  60606-6357
Telephone: (312) 474-6300
Fax: (312) 474-0448
Email: jgriffith@marshallip.com
Email: gchinlund@marshallip.com
Email: jhartzell@marshallip.com

## VERIFICATION

I, David A. Epstein, Cook County Public Administrator and Supervised Administrator for the Estate of Vivian Maier, declare under penalty of perjury that I have read the foregoing Verified Complaint and that the allegations it contains are true and correct to the best of my knowledge, information, and belief.

Executed April 18, 2017

David A. Epstein
Public Administrator for Cook County

21