# IN THE UNITED STATE DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| THE ESTATE OF VIVIAN MAIER, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> JEFFREY GOLDSTEIN, an ) <br> individual, VIVIAN MAIER ) <br> PRINTS, INC., a Delaware ) <br> corporation, ) <br> ) <br> Defendants. ) <br> ) | Case No. 17-cv-2951 <br><br> JURY TRIAL DEMANDED |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF A (1) TEMPORARY RESTRAINING ORDER, (2) ASSET RESTRAINING ORDER, (3) AND EXPEDITED DISCOVERY ORDER**

I. INTRODUCTION AND SUMMARY OF ARGUMENT

The Estate of Vivian Maier (the "Estate" or "Plaintiff") brings an action against Jeffrey Goldstein and Vivian Maier Prints, Inc. (together, "Goldstein" or "Defendants") for copyright infringement, equitable easement, federal trademark infringement, and related claims. As alleged in the Verified Complaint, Defendants have engaged in the copying, public exhibition, and commercial exploitation of hundreds of unpublished, copyrighted photographs taken by Maier through, *inter alia*, their sale of unauthorized counterfeit Maier photographic prints. Defendants have also falsely marketed and promoted their infringing activities as "officially sanctioned" by Maier and/or the Estate in order to cause confusion among the public and to illicitly profit from that confusion. In short, Defendants have run a sophisticated infringement operation seeking to exploit Maier and her work, with reckless disregard for anything except generating profits.

The Estate is deeply concerned that upon learning of the Verified Complaint in this matter, Defendants will attempt to convey the Maier works that remain in Defendants' possession to a buyer outside of the country, making it extraordinarily difficult, if not impossible, for the Estate to obtain the remedies it seeks in its suit. Defendants have a history of such underhanded dealings with the Estate. While purportedly negotiating with the Estate in 2014 concerning a citation to discover assets issued by the Cook County Circuit Court and a resolution to the Estate's claims of infringement, Defendants orchestrated a transfer of a substantial portion of the Maier works in their possession to a buyer in Canada in order to prevent the Estate from effectively seeking redress in U.S. courts. Verified Complaint at ¶ 50–52. Unbeknownst to the Estate, Defendants never intended to reach an agreement with the Estate or to negotiate in good faith. As Goldstein told a journalist shortly after the sale of the works, he would rather "cut his

wrists" than deal with the Estate. *Id.* at ¶ 53. Defendants used bad faith sham negotiations to obtain sufficient time to find a buyer for their black and white Maier negatives outside the United States, and consummated that sale after they had received, but before the Estate was able to serve the citation to discover assets. (*See* Declaration of James Griffith ("Griffith Decl.") at ¶ 14). Subsequently, and over the last number of months, Goldstein reengaged the Estate in discussions regarding resolution, but has only given lip service to cooperating. (Griffith Decl. ¶ 18–19). He still refuses to provide the Estate with documents and information related to his exploitation of Maier works. Goldstein's conduct has made clear that there is an overwhelming risk that Goldstein will take unilateral action upon learning of the Estate's lawsuit that will deprive the Estate of the remedies it seeks.

      The Estate's well-pleaded factual allegations and evidence establish that issuing an *ex parte* temporary restraining order against Defendants is necessary and proper. There is no dispute that the Estate is the owner of the copyrights in the works held by Defendants. Issuance of an injunction is necessary to ensure that Defendants do not attempt to transfer the works to third parties who are likely to infringe the works, publish them in a manner inconsistent with the Estate's strategy for curating and maintaining Maier's oeuvre, or hide them from the Estate and the public, thereby preventing the works' lawful registration and exploitation by the Estate.

## II.   STATEMENT OF FACTS

### A. The Estate's Copyrights

      Vivian Maier was a photographer who spent most of her life living in the Chicago, Illinois area working as a nanny. Verified Complaint at ¶ 14. During her lifetime, Maier's photography was never published, professionally exhibited, or otherwise known. *Id.* at ¶ 15. In fact, the majority of the photographs she took were never developed while she was alive. *Id.*

Maier died intestate on April 21, 2009, in Cook County, Illinois. *Id.* at ¶ 16. Since Maier died with no known heirs, no estate was opened upon her death. *Id.* However, Maier and her photography achieved worldwide posthumous fame and recognition. *Id.* at ¶ 2. Consequently, a number of individuals unsuccessfully attempted to establish themselves as her heirs, and thus owners of the valuable copyrights in her photoraphy. *Id.* at ¶ 18. On July 1, 2014, as it became apparent that third parties were fraudulently attempting to claim ownership of Maier's works, and as the value of the Estate's copyrights became apparent, the Circuit Court of Cook County (Probate Division) appointed David A. Epstein, the Cook County Public Administrator, as supervised administrator of Maier's Estate pursuant to 755 ILCS 5/13-4 (stating that, when a person dies owning any real or personal property and there is no person having a prior right to administer the estate, the public administrator may take such measures as he deems proper to protect from waste, loss, or embezzlement). *Id.* at ¶ 20. Neither the Cook County Public Administrator nor the Circuit Court, which has the ultimate authority to make heirship determinations, have identified Maier's heir(s). *Id.* at ¶ 21. Under Illinois law and the Copyright Act, 17 U.S.C. § 201(d)(1), the Estate holds the copyrights in works of authorship created by Maier, including but not limited to photographs (including those embodied in undeveloped rolls of color and black and white film, negatives, prints, and contact sheets), audiovisual works, motion pictures, literary works (including letters and correspondence), sound recordings, and other works of authorship. *Id.* at ¶ 19. Therefore, pursuant to the July 1, 2014 order appointing the Cook County Public Administrator as the Supervised Administrator of the Estate, the Estate has the power and legal obligation to enforce the intellectual property rights held by the Estate in Maier's works.

3

### B. Defendants' Illegal Activities

As detailed in the Verified Complaint, in approximately 2010, Goldstein accumulated, in a series of purchases, a large collection of works created by Maier, including approximately 2,000 vintage prints, approximately 20,000 black and white negatives and slides, about 1,700 color negatives, nearly 300 rolls of undeveloped film, and dozens of motion picture reels. *Id.* at ¶ 23–25. On October 25, 2010, Goldstein founded Vivian Maier Prints, Inc., a corporation through which he began exploiting the Maier negatives and other copyrighted material. *Id.* at ¶ 26. In 2010 and 2011, Goldstein processed undeveloped film he had acquired, and made unauthorized digital copies of works in his possession. *Id.* at ¶ 29. He also began creating unauthorized prints from the Maier negatives. *Id.* at ¶ 29–30. In March 2011, Goldstein began selling the unauthorized, posthumous prints he was creating of Maier's unpublished works for over $1,000.00 each, and often for much higher prices. *Id.* at ¶ 31. A month later, in April 2011, Goldstein began to exhibit these unauthorized prints of Maier's unpublished works at public exhibitions, including at the Russell Bowman Art Advisory in Chicago. *Id.* at ¶ 32. Between 2012 and 2015, Goldstein expanded his enterprise selling unauthorized Maier prints to galleries outside of Chicago, including the Lumiere Gallery in Atlanta, the Basil Hallward Gallery in Portland, Oregon, and the Bi9 Biennale Dell'Immagine in Chicasso, Switzerland. *Id.* at ¶ 36. Goldstein continued to organize public exhibitions across the world and offered prints of Maier's unpublished works for sale without consent. *Id.* at ¶ 38–40. Additionally, within a two year span, Goldstein caused two books of Maier's photography to be published: *Vivian Maier: Out of the Shadows* and *Vivian Maier: A Photographer Found*. *Id.* at ¶ 35, 41.

Defendants never sought or received permission from the Estate to reproduce and sell prints of Maier's work, to conduct exhibitions of Maier's work, to publish either book of Maier's

works, to use Ms. Maier's name or identity in the trade name of Goldstein's company, or to make any statements suggesting that Goldstein's conduct was endorsed or affiliated with Maier or the Estate. *Id.* at ¶ 42.

After the Public Administrator's appointment in July 2014, the Estate began to investigate Goldstein's activities and attempted to engage in settlement discussions with Defendants. (Griffith Decl. at ¶ 4). In August 2014, the Estate filed a petition with the Cook County Circuit Court for the issuance of a Citation to Discover and/or Recover Assets from Defendants. (Griffith Decl. at ¶ 3). After the petition was granted, the Estate entered into negotiations with Goldstein through his counsel concerning the citation and a potential resolution to the matter. (Griffith Decl. at ¶ 5). Unbeknownst to the Estate, these negotiations proved to be a sham. As Goldstein purported to discuss resolution with the Estate through his counsel, he was abroad secretly seeking a buyer for his collection of black and white negatives. (Griffith Decl. at ¶ 11). In December 2014, Defendants consummated the sale of their entire collection of black and white Maier negatives to the Stephen Bulger Gallery, located in Toronto, Canada. (Griffith Decl. at ¶ 14). Goldstein chose Bulger as a buyer for the negatives because Bulger was outside the United States, thus impeding the Estate's enforcement efforts by putting the negatives out of the reach of both U.S. and Illinois courts. Verified Complaint, ¶ 52. Bulger's statements published in *Canadian Art* magazine evidence Defendants' intent: "[T]he border does complicate things a bit . . . for Cook County to try to extradite material that's in another country, there's definitely a couple more layers of protection there." *Id.* Additionally, Goldstein told the Chicago Tribune in an article published on January 23, 2015, "I'm not going to partner up with Cook County. I'd cut my wrists first." *Id.* at ¶ 53. Despite the sale of negatives and the public comment, Goldstein seemingly had a change of heart in late 2016 and engaged the Estate in

5

negotiations to possibly resolve the dispute. (Griffith Decl. ¶ 18–19). The ostensible change of attitude, however, recently reverted back to obstinance. *Id.* When asked to produce documents and information regarding the enterprise Goldstein built around Maier's works for purposes of advancing settlement discussions, Goldstein decided to resist and obstruct.

### III. JURISDICTION

This Court has original subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. §§ 1331, 1338(a)-(b). Additionally, the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a) are also properly brought before this Court because they are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred. *See* Verified Complaint at ¶¶ 9–10.

This Court may properly exercise personal jurisdiction over Defendants since Defendants directly target business activities toward consumers in Illinois and cause harm to the Estate's business within this Judicial District. Each Defendant targets Illinois residents and has exhibited, sold, and shipped counterfeit Maier works to consumers within the State of Illinois. *See id.* at ¶¶ 32, 40. Without the benefit of an evidentiary hearing, a plaintiff bears only the burden of making a prima facie case for personal jurisdiction; all of a plaintiff's asserted facts should be accepted as true and any factual determinations should be resolved in its favor. *See uBID, Inc. v. GoDaddy Group, Inc.* 623 F.3d 421, 423 (7th Cir. 2010).

### IV. ARGUMENT

Rule 65(b) of the Federal Rules of Civil Procedure provides that the Court may issue an *ex parte* temporary restraining order where immediate and irreparable injury, loss, or damage

will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65(b). The entry of a temporary restraining order is appropriate because it would immediately stop Defendants from transferring the only extant copies of works in which the Estate holds the copyright interest, prevent Defendants from thwarting the ability of the Estate to obtain the equitable relief it seeks, and preserve the status quo until such time as a full hearing can be held.

In the absence of a temporary restraining order without notice, Defendants can and likely will sell their remaining collection of Maier works to foreign buyers, in order to circumvent the Estate's ability to gain meaningful relief. In addition, courts have recognized that civil actions against counterfeiters present special challenges that justify proceeding on an *ex parte* basis. *See Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) ("proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers before temporary injunctive and impoundment relief can be granted").

### A. Standard for Temporary Restraining Order and Preliminary Injunction

District Courts within this Circuit hold that the standard for granting a temporary restraining order and the standard for granting a preliminary injunction are identical. *See, e.g. Charter Nat'l Bank & Trust v. Charter One Fin., Inc.*, No. 1:01-cv-00905, 2001 WL 527404, *1 (N.D. Ill. May 15, 2001) (citation omitted). A party seeking to obtain a preliminary injunction must demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001). If the Court is satisfied that these three conditions have been met, then it must consider the irreparable harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against

the irreparable harm the moving party will suffer if relief is denied. *Id.* Finally, the Court must consider the potential effect on the public interest (non-parties) in denying or granting the injunction. *Id.* The Court then weighs all of these factors, "sitting as would a chancellor in equity," when it decides whether to grant the injunction. *Id.* (quoting *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)). This process involves engaging in what the Court has deemed "the sliding scale approach." The sliding scale approach is not mathematical in nature, rather "it is more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief." *Id.* at 896. The greater the movant's likelihood of succeeding on the merits, the less the balance of harms need be in his favor. *Eli Lilly & Co. v. Nat. Answers, Inc.*, 233 F.3d 456, 461 (7th Cir. 2000).

### B. The Estate Will Likely Succeed on the Merits of Its Copyright Infringement and Equitable Easement Claims

The Estate need only demonstrate a "better than negligible" chance of success on the merits of at least one of its claims, a standard the court has characterized as a "low requirement." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of USA*, 549 F.3d 1079, 1096 (7th Cir. 2008). The Estate will likely succeed on both its copyright infringement and equitable easement claims, which are the two claims on which the Estate bases the instant motion.

### 1. The Estate Will Likely Succeed On its Copyright Infringement Claim

To succeed on a copyright infringement claim, a plaintiff is required to prove: (1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original. *Feist Pub., Inc. v. Rural Tel. Serv. Co. Inc.*, 499 U.S. 340, 361 (1991). A plaintiff can prove copying either directly or indirectly by establishing that the defendant had access, and produced something "substantially similar" to the copyrighted work.

Neither ownership nor the fact of copying is likely to be disputed in this case. Because Maier died intestate and because no heirs have been determined by the Circuit Court, the Estate is the copyright holder as to all of Maier's works under the Copyright Act and Illinois law. 755 ILCS 5/13-4; *see* 17 U.S.C. § 201 (a copyright may be, ". . . . passed as personal property by the applicable laws of intestate succession"). Additionally, the works Defendants exhibited, printed in compilations, and copied and sold as limited edition prints are all works as to which the Estate holds the copyright. Throughout all of their activities, Defendants have described and marketed the works as those of Vivian Maier. Finally, all of Defendants' infringing conduct was undertaken without the Estate's permission or authorization. The Estate has established a substantial likelihood of success on the merits of its copyright infringement claim.

### 2. The Estate Will Likely Succeed On its Equitable Easement Claim

The Estate has also pled an alternative claim for equitable easement, seeking to gain access to the physical objects that are, in most cases, the sole embodiments of the Estate's copyrighted works in order to preserve and potentially exploit its copyright interest in those works. The Estate's claim is supported by *Community for Creative Non-Violence v. Reid* where the court granted an implied easement of necessity granting the plaintiff a limited possessory right in the only extant copy of the work, possessed by the defendant. 1991 WL 370138, at *1 (D.D.C. Oct. 16, 1991).

Similarly, the Estate is entitled to access the copyrighted Maier works in Defendants' possession so that it can create reproductions of the works as to which the Estate has no other means of access. The film negatives in Goldstein's possession represent the sole embodiment of each of those works except, perhaps, for illegal copies made by Goldstein. To the extent Goldstein holds other embodiments of Maier works not accessible to the Estate, such as vintage

9

prints, the Estate is also entitled to an equitable easement as to those works. Pursuant to *Community for Creative Non-Violence*, the Estate, as the sole copyright owner, is entitled to a limited possessory right to digitize or take other steps to create an alternative master copy of the works authored by Vivian Maier in Defendant's possession, custody, or control. *Id.* The Estate is likely to succeed on its equitable easement claim.

### C. There Is No Adequate Remedy at Law and the Estate Is Likely to Suffer Irreparable Harm in the Absence of Preliminary Relief

The essence of the injury in "copyright infringement is that the copyright owner is deprived of control over the use of the copyrighted material." *Igram v. Page*, 1999 WL 705895, at * (N.D. Ill. Aug. 27, 1999). Courts have also held that irreparable injury is evident where a defendant has "usurped" plaintiff's "creative control" by unlawfully licensing plaintiff's copyrighted work. *See Kinsey v. Jambow, Ltd.*, 76 F. Supp. 3d 708, 710 (N.D. Ill. 2014) (finding irreparable injury where defendant licensed plaintiff's copyrighted work without authorization).

Defendants' unauthorized exploitation of the copyrighted, unpublished Maier works has irreparably harmed, and continues to irreparably harm, the Estate through: (a) the misappropriation of the Estate's ability to control the quality and quantity of prints, exhibitions, and publications made from and utilizing Maier's works; (b) depriving the Estate of its right to select which Maier works should be commercially available and exploited; and (c) depriving the Estate access to the works in order to register the copyrights in them. Additionally, Defendants' prior misconduct, selling significant portions of their collection in order to thwart the Estate's efforts to either access it or seek effective judicial intervention, weighs strongly in favor of *ex parte* preliminary injunctive relief. If Defendants are permitted to repeat their behavior and transfer what remains of their collection along with other remaining assets, the Estate's remedies and its suit against Defendants could be rendered futile. Ultimately, some other remedy, such as

monetary relief, would be inadequate because the Estate would not have the ability to control the Maier works to which it holds rights under the Copyright Act.

### D. The Balancing of Harms Tips in the Estate's Favor

The balancing of harms tips decidedly in the Estate's favor. As willful infringers, Defendants are entitled to little equitable consideration. *See Gallery House, Inc. v. Yi*, 582 F. Supp.1294, 1298 (N.D. Ill. 1984) (the possibility that a defendant will lose profits "merits little equitable consideration;" and, an infringer has no "standing to complain that his vested interest will be disturbed"). Moreover, Defendants' prior conduct, selling Maier works to foreign buyers in order to evade the exercise of jurisdiction over the works by U.S. courts, strongly evidences Defendants' bad faith and the strong risk that Defendants will again impede the Estate's pursuit of its claims and its efforts to protect its copyright interests. To the extent Defendants would be harmed at all by an injunction, that harm is far outweighed by the immeasurable damage that would be done to the Estate if Defendants were to divest themselves of the unique Maier works in Defendants' possession, both making some of the Estate's most significant remedies futile and potentially depriving the Estate of the ability to register and fully protect its copyrighted works.

### E. Issuance of the Injunction Is in the Public Interest

Courts within this Circuit have upheld the importance of protecting copyrights. *See Erickson v. Trinity Theatre, Inc.*, 13 F.3d 1061, 1073 n. 11 (7th Cir. 1994) ("public policy strongly favors the protection of copyrights"). The public has an interest in maintaining the protection provided by copyright law so that others are encouraged to create, knowing their works can be protected from infringers. *See Atari, Inc. v. North American Philips Consumer Elec. Corp.*, 672 F.2d 607, 620 (7th Cir. 1982) (finding public interest is served by preserving the

11

integrity of the copyright laws which seek to encourage individual effort and creativity by granting valuable enforceable rights").

Here, the public's interest is best served by preserving the Estate's copyrighted works. If the works were to be transferred out of the Court's jurisdiction, the public's ability to access Maier's works, which are a significant piece of Chicago's artistic and cultural history, would be severely impacted. Additionally, enforcing copyright laws encourages creative endeavors that benefit the public. *See In re Aimster Copyright Litigation*, 252 F. Supp. 2d 634, 648 (N.D. Ill. 2002) (granting a preliminary injunction because "copyright laws embody a policy of encouraging creativity").

### F. The Estate Is Entitled to a Temporary Restraining Order Preventing the Transfer of the Instruments of Infringement, of Counterfeit Copies, and of Materials Whose Transfer Would Irreparably Disturb the Status Quo and Deprive the Estate of a Crucial Remedy

#### 1. Issuance of Temporary Restraining Order

The Estate has sufficiently proven all four elements required to establish the necessity of a preliminary injunction. Seizure of the infringing works and depositing them with the Court is necessary to allow the Estate to pursue and enforce its rights without Defendants destroying or hiding relevant evidence. As described above, if Defendants are given formal notice of the Estate's request for injunctive relief, they are the sorts of defendants who would likely hide, move, or destroy evidence. *See Century Home Entmt. Inc. v. Laser Beat, Inc.*, 859 F. Supp. 636, 638–639 (E.D.N.Y. 1994) ("it is the norm in this district that where a danger of destruction or hiding of the evidence exists to grant *ex parte* orders of seizures . . . Plaintiff need not show that a particular defendant would not adhere to a TRO but rather only that someone like the defendant would be likely to hide or destroy the evidence of his infringing activity").

**2. Issuance of Civil Seizure / Impoundment Order**

The Estate requests impoundment and seizure of all unauthorized prints and instruments of infringement, including film negatives and prints in Defendants' possession, custody, or control. Pursuant to 17 U.S.C. § 503, the court can order the impoundment of all "copies or phonorecords claimed to have been made or used in violation of the exclusive rights of the copyright owner" and "all plates, molds, film negative, or other articles by means of which such copies or phonorecords may be reproduced." Where defendants deliberately traffic in infringing merchandise, federal courts, including the Northern District of Illinois, have issued impoundment orders. *Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996). Additionally, federal courts in Illinois have issued writs of seizure where defendants profit and sell unauthorized copies of copyrighted material. *Columbia Pictures, Inc. v. Tucker*, 1997 WL 779093 (N.D. Ill. 1997) (United States Marshall seized 261 illegally duplicated videocassettes).

The seizure of unauthorized copies of copyrighted works and instruments of infringement is further supported by *Epic Games, Inc. v. Altmeyer*, 2008 WL 4853634 (S.D. Ill. Nov. 5, 2008). In *Epic Games,* the defendant pirated copies of videogames and sold them prior to the date of publication. The Court ordered an *ex parte* TRO and *ex parte* order for seizure and impoundment, in part, because the small, physical size of the DVD videogames made it easy for the defendant to move, hide, or destroy the evidence. *Id.* at *5. Further, if the defendant had the opportunity to destroy or hide evidence, prosecution of the action would be useless. *Id*.

**3. An Order Preventing the Fraudulent Transfer of Assets**

The Estate requests an *ex parte* order restraining Defendants' assets so that the Estate's right to an equitable accounting of Defendants' profits from sales of counterfeit Maier works is not impaired. If such an order is not issued in this case, Defendants may disregard their

responsibilities as they did in ignoring the Estate's litigation hold letter and fraudulently transfer financial assets to overseas accounts before an order is issued. *See* Verified Complaint at ¶ 45, 57. Defendants have already demonstrated their willingness to impede the Estate's efforts to obtain discovery of the works that were in Defendants' possession by selling them to buyers abroad, making it extremely difficult, if not impossible, for the Estate to obtain an equitable easement to access, register the copyright in, and exercise its rights under the Copyright Act. If Defendants were to hide or dispose of their assets upon learning of the litigation, an accounting by the Estate would be rendered meaningless.

Courts have the inherent authority to issue a prejudgment asset restraint when a plaintiff's complaint seeks relief in equity. *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995). In addition, the Estate has shown a strong likelihood of success on the merits. The Estate's Verified Complaint seeks, among other relief, that Defendants account for and pay to the Estate all profits realized by Defendants by reason of Defendants' infringing acts. Therefore, this Court has the inherent equitable authority to grant the Estate's request for a prejudgment asset freeze to preserve relief sought by the Estate, and such an order is warranted in this case.

V. THE ESTATE IS ENTITLED TO EXPEDITED DISCOVERY

The United States Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Vance v. Rumsfeld*, No. 1:06-cv-06964, 2007 WL 4557812, *6 (N.D. Ill. Dec. 21, 2007) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). The Estate respectfully requests an *ex parte* order allowing expedited discovery so that the Estate can ascertain all of the work that Defendants have infringed as well as the profits accrued to

Defendants due to the infringement. The discovery requested on an expedited basis in the Estate's Proposed Temporary Restraining Order has been limited to include only what is essential to prevent further irreparable harm.

## VI. A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

The posting of security upon issuance of a temporary or permanent injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum*, 889 F.2d 787, 789 (8th Cir. 1989); *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 (4th Cir. 1999); Fed. R. Civ. P. 65(c). Because of the strong and unequivocal nature of the Estate's evidence of counterfeiting, infringement, and prior conduct seeking to thwart discovery, the Estate respectfully requests that this Court require the Estate to post a bond of no more than $10,000.00. *See, e.g., Oakley, Inc. v. Does 1-100;* No. 12-cv-9864 (N.D. Ill. Dec. 14, 2012) (unpublished) ($10,000 bond); *True Religion Apparel, Inc. v. Does 1-100;* No. 12-cv-9894 (N.D. Ill. Dec. 20, 2012) (unpublished) ($10,000 bond).

## VII. CONCLUSION

Based upon the foregoing, the Estate respectfully requests: (1) an *ex parte* temporary restraining order preventing Defendants from advertising, offering for sale, selling, distributing, transferring, assigning, destroying, or concealing any original Maier works or copies of Maier works that are in Defendants' possession; (2) an *ex parte* temporary restraining order seizing and placing into the custody of the Court all film negatives, prints, and digitized versions of Maier works in Defendants' possession, custody, or control from which copies of Maier works could be made; (3) an *ex parte* temporary restraining order preventing the fraudulent transfer of Defendants' assets; and (4) an order for expedited discovery allowing the Estate to inspect and copy Defendants' records and materials relating to Maier works.

April 20, 2017                                   BY:  THE ESTATE OF VIVIAN MAIER

                                              Its counsel:

                                                /s/James E. Griffith
                                                James E. Griffith
                                                Gregory J. Chinlund
                                                Julianne M. Hartzell
                                                Marshall, Gerstein & Borun LLP
                                                233 South Wacker Drive
                                                6300 Willis Tower
                                                Chicago, IL  60606-6357
                                                Telephone: (312) 474-6300
                                                Fax: (312) 474-0448
                                                Email: jgriffith@marshallip.com
                                                Email: gchinlund@marshallip.com
                                                Email: jhartzell@marshallip.com

## **CERTIFICATE OF SERVICE**

    The undersigned hereby certifies that a true and correct copy of the foregoing has been served via the Court's CM/ECF system on this 20th day of April 2017, which will send electronic notification to all counsel of record.

                                            /s/ James E. Griffith
                                            James E. Griffith