# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| THE ESTATE OF VIVIAN MAIER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 17 C 2951 |
| | ) | |
| JEFFREY GOLDSTEIN AND VIVIAN MAIER PRINTS, INC., | ) | Judge Thomas M. Durkin |
| | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION & ORDER

The Estate of Vivian Maier brings this copyright and trademark infringement case against defendants Jeffrey Goldstein and Vivian Maier Prints, Inc., for allegedly engaging in copying, public exhibition, and commercial exploitation of the unpublished photographs of Vivian Maier, a Chicago photographer who achieved worldwide fame posthumously. Before the Court is defendants' motion to dismiss plaintiff's amended complaint (R. 42). Defendants first rehash an argument already rejected when this Court granted plaintiff's motion for a temporary restraining order ("TRO") that the Court lacks subject matter jurisdiction under the probate exception to federal jurisdiction. On this basis, defendants argue that the case should be dismissed under Fed. R. Civ. P. 12(b)(1). Defendants also argue that plaintiff fails to state a claim under Fed. R. Civ. P. 12(b)(6). For the following reasons, defendants' motion is denied.

## Standard

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *E.g.,*
*Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th
Cir. 2009). A complaint must provide "a short and plain statement of the claim
showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and giving
defendant "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-
defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678
(2009). While "detailed factual allegations" are not required, "labels and
conclusions, and a formulaic recitation of the elements of a cause of action will not
do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual
matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"
*Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial
plausibility when the plaintiff pleads factual content that allows the court to draw
the reasonable inference that the defendant is liable for the misconduct alleged.'"
*Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In
applying this standard, the Court accepts all well-pleaded facts as true and draws
all reasonable inferences in favor of the non-moving party. *Id.*

Rule 12(b)(1) authorizes the Court to dismiss any claim for which the Court
lacks subject matter jurisdiction. Article III, Section 2 of the U.S. Constitution
defines the outer bounds of a federal court's subject matter jurisdiction; generally, a
court's jurisdiction in a civil case arises from a federal question, a deprivation of

one's civil rights, or diversity among the parties. *See* 28 U.S.C. §§ 1331, 1332, 1343; *see also Rabe v. United Air Lines, Inc.*, 636 F.3d 866, 872 (7th Cir. 2010). When a defendant challenges jurisdiction, the plaintiff bears the burden of establishing a court's jurisdiction. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992). As with a Rule 12(b)(6) motion, in deciding a Rule 12(b)(1) motion the Court must "accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff." *St. John's United Church of Christ v. City of Chi.*, 502 F.3d 616, 625 (7th Cir. 2007) (quotation marks omitted).

## Background

Vivian Maier spent most of her life working in the Chicago area as a nanny. R. 38 ¶ 14. Her photography was never professionally shown during her lifetime; indeed, most of her photographs were not developed while she was alive. *Id.* ¶ 15. Maier died intestate on April 21, 2009. *Id.* ¶ 16. With no known heirs at the time, a public administrator was appointed to administer Maier's estate. *Id.* ¶¶ 19-21.

Maier's estate—the plaintiff in this case—owns the copyright in all works of authorship created by Maier, including but not limited to her photographs ("Maier works"). *Id.* ¶ 18. Plaintiff also owns the VIVIAN MAIER trademark. *Id.* ¶ 22. A use-based application for that trademark is currently pending with the U.S. Patent and Trademark Office. *Id.*

Beginning in approximately 2010, defendant Goldstein amassed a series of Maier's vintage prints. *Id.* ¶ 23. He also acquired approximately 15% of Maier's known black and white negatives and slides (totaling approximately 17,000

3

images), negatives for approximately 1,800 color images, and other Maier-related items. *Id.* ¶¶ 24-25.

On October 25, 2010, Goldstein founded defendant Vivian Maier Prints, Inc. *Id.* ¶ 26. In late 2010 and 2011, Goldstein processed undeveloped film he had acquired and made digital copies and prints of the Maier works in his possession. *Id.* ¶¶ 29-30. He began to sell the prints for well over $1,000 each. *Id.* ¶ 31. In approximately April 2011, Goldstein began to exhibit the prints at public exhibitions. *Id.* ¶ 32.

Goldstein registered the domain name "vivianmaierprints.com" and launched a website at that address in approximately February 2011. *Id.* ¶ 33. The website featured a facsimile signature of Vivian Maier and the header "Vivian Maier Prints, Inc." *Id.* Goldstein posted dozens of images of Maier works on the website without authorization from plaintiff. *Id.* ¶ 34. Although Goldstein has since disabled the homepage, pages throughout the site displaying Maier works remain active. *Id.*

In October 2012, Goldstein caused a book to be published consisting largely of reproductions of unpublished Maier photographs; a special edition of the book sold for $850 a copy. *Id.* ¶ 35. Goldstein also began selling Maier prints to galleries outside Chicago in 2012. *Id.* ¶ 36.

In 2013 and 2014, Goldstein continued to organize public exhibitions and sales of Maier's work for significant sums. *Id.* ¶¶ 38, 40. He "licensed" certain Maier images for which he held the negatives to the British Broadcasting Corporation ("BBC"), which used them in connection with a 2013 documentary on Maier. *Id.* ¶

39. He also caused another book of reproductions of Maier photographs to be published in October 2014. *Id.* ¶ 41.

Goldstein never sought or received permission from plaintiff to reproduce and sell prints of Maier's work, to conduct exhibitions of Maier's work, to publish books using her images, to use her name or identity in the trade name of Goldstein's company, or to make any statements suggesting that Goldstein's enterprise was endorsed by or affiliated with plaintiff. *Id.* ¶ 42. The complaint alleges on information and belief that when asked about copyright issues, Goldstein took the position "that his efforts to establish a market for Maier's works entitled him to copy, publish, and profit from Maier's works." *Id.* ¶ 43.

In August 2014, plaintiff's attorneys sent Goldstein a letter informing him that they had been retained to investigate, among other things, Goldstein's potential infringement of plaintiff's copyright. *Id.* ¶ 45. The letter informed Goldstein of his obligation to take reasonable steps to preserve and retain all documents related to Maier and his use of her works. *Id.*

In early September 2014, the Cook County Circuit Court granted a petition for a citation to discover and recover assets from Goldstein. *Id.* ¶¶ 44, 46. Plaintiff's and defendants' counsel subsequently had negotiations about a possible resolution of the issues between the parties. *Id.* ¶¶ 47-49. While these negotiations were occurring, Goldstein traveled to Canada to seek a purchaser of his collection of black and white Maier negatives. *Id.* ¶ 50. In approximately December 2014, Goldstein sold his entire collection of black and white Maier negatives to a gallery in Canada.

*Id.* ¶ 51. The gallery explained in a January 2015 interview with *Canadian Art* magazine that "the border does complicate things a bit . . . for Cook County to try to extradite material that's in another country, there's definitely a couple more layers of protection there." *Id.* ¶ 52. A January 2015 article reported that Goldstein told the Chicago Tribune: "I'm not going to partner up with Cook County. I'd cut my wrists first." *Id.* ¶ 53. Plaintiff believes Goldstein continues to possess approximately 1,400 prints of Maier works with a market value of between two and four million dollars. *Id.* ¶ 66.

In February 2015, Goldstein filed a counterclaim against plaintiff in the Cook County lawsuit for unjust enrichment, arguing that his infringing conduct created the value of Maier's copyright, and he should be entitled to an interest in Maier's works as a result. *Id.* ¶ 55. The court dismissed the counterclaim in January 2016. *Id.* In July 2017, plaintiff voluntarily dismissed its citation proceedings against defendants in Cook County. R. 46 at 6 n.2.

Plaintiff filed this lawsuit in April 2017. R. 1. Shortly thereafter, this Court granted plaintiff's motion for a TRO. The Court found that plaintiff is the owner of the copyrights in the Maier works and is likely to prevail on its claims for copyright infringement and equitable easement. R. 14 at 1. It found that the irreparable harm plaintiff would suffer if defendants assigned or sold any Maier works justified temporarily "[r]estraining Defendants from advertising, offering for sale, selling, distributing, transferring, assigning, destroying, or concealing any original Maier works or copies of Maier works that are in Defendants' possession." *Id.* at 2.

In June 2017, plaintiff filed an amended complaint alleging: (1) copyright infringement in violation of the Copyright Act (Count I); (2) equitable easement (Count II); (3) trademark infringement in violation of the Lanham Act (Count III); (4) false designation of origin in violation of the Lanham Act (Count IV); (5) unfair competition in violation of the Lanham Act (Count V); (6) a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Count VI); (7) common law unfair competition (Count VII); (8) common law trademark infringement (Count VIII); and (9) cybersquatting (Count IX). Defendants have moved to dismiss all of plaintiff's claims.

## Discussion

### I. Subject Matter Jurisdiction

Just as they argued at the hearing on plaintiff's motion for a TRO, defendants claim that the probate exception to federal jurisdiction deprives this Court of subject matter jurisdiction over their claims. Plaintiff counters that the probate exception does not apply in this case, and this Court has exclusive jurisdiction over plaintiff's claim under the Copyright Act and original jurisdiction over plaintiff's trademark claims under the Lanham Act. *See* 28 U.S.C. § 1338(a) ("The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to . . . copyrights and trademarks. No State court shall have jurisdiction over any claim for relief arising under any Act of Congress relating to . . . copyrights.").

For the same reasons this Court rejected defendants' argument based on the probate exception when it decided plaintiff's TRO motion, the Court rejects defendants' argument in its motion to dismiss. "[T]he probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction." *Marshall v. Marshall*, 547 U.S. 293, 311-12 (2006). The probate exception has a "'distinctly limited scope'" and applies to "only three types of claims": (1) "claims seeking to probate or annul a will or administer an estate— core probate functions"; (2) "claims that, although not invading probate's core, nonetheless 'interfere' with it"; and (3) "claims when there are 'sound policy' reasons to do so." *Wolfram v. Wolfram*, 78 F. Supp. 3d 758, 763 (N.D. Ill. 2015) (quoting *Marshall*, 547 U.S. at 311).

In *Jones v. Brennan*, 465 F.3d 304 (7th Cir. 2006), on which defendants rely, the Seventh Circuit held that the probate exception applies to cases premised on this Court's federal-question jurisdiction as well as cases premised on diversity jurisdiction. *Id.* at 306. The *Jones* court found that the plaintiff's complaints "about the maladministration of her father's estate by the Cook County probate court" were "tantamount to asking the federal district court to take over the administration of the estate," which "clearly would violate the probate exception." *Id.* at 307. But, the *Jones* court further explained, "if there is at least one colorable

federal claim not barred by the probate exception, the district court has jurisdiction over the plaintiff's state-law claims by virtue of the court's supplemental jurisdiction." *Id.* at 309.

This case is nothing like *Jones*. Defendants are not heirs or claimants of Maier's estate. This case does not involve complaints about the "maladministration" of Maier's estate or require this Court "to take over the administration." *See id.* at 307. Rather, this case is about whether defendants infringed on the estate's copyright and trademark interests and whether plaintiff is entitled to certain remedies as a consequence.

Two years after *Jones*, the Seventh Circuit held in *Gustafson v. zumBrunnen*, 546 F.3d 398 (7th Cir. 2008), that a lawsuit "based ultimately on [a] will" was "not within the probate exception" where "[t]he judgment sought would just add assets to the decedent's estate; it would not reallocate the estate's assets among contending claimants or otherwise interfere with the probate court's control over and administration of the estate." *Id.* at 400. Similarly in *Jimenez v. Rodriguez-Pagan*, 597 F.3d 18 (1st Cir. 2010), the First Circuit held that the probate exception did not apply to a lawsuit dealing with proceeds from the sale of an apartment for which the decedent allegedly held an option to purchase "[b]ecause neither the money nor the apartment are yet part of the decedent's estate" or currently in custody of the probate court. *Id.* at 24. The court explained that "[w]hile divvying up an estate falls squarely within the probate exception, merely increasing it does not." *Id.* Like *Gustafson* and *Jimenez*, this case involves claims that could add to Maier's

estate, but would not reallocate the estate's assets among competing claimants or otherwise interfere with the estate administration.

Defendants argue that this case "interfere[s]" with a probate proceeding, *Wolfram*, 78 F. Supp. 3d at 763, because it affects property that might in the *future* become part of the estate if this Court determines "that the intellectual property belongs to the Maier estate." R. 50 at 2. But under *Gustafson* and *Jimenez*, what matters for purposes of the probate exception is whether the case interferes with property that is *currently* part of the estate. *Gustafson*, 546 F.3d at 400; *Jimenez*, 597 F.3d at 24. This is also what the *Wolfram* court explained in a later passage that defendants ignore: "a claim only interferes if it seeks a judgment against a specific thing and that thing is *currently* subject to the *in rem* jurisdiction of a state court. . . . If [as in *Gustafson*] the assets need to be added to the estate they are, of course, not currently a part of the estate and so not (yet) under control of the probate court." 78 F. Supp. 3d at 763-65 (emphasis added).

The probate exception thus does not deprive the Court of its exclusive jurisdiction over plaintiff's copyright claim and original jurisdiction over plaintiff's Lanham Act claims. And because "there is at least one colorable federal claim not barred by the probate exception," this Court "has jurisdiction over the plaintiff's state-law claims by virtue of the court's supplemental jurisdiction." *Jones*, 465 F.3d at 309.

## II.     Count I – Copyright Infringement

Defendants argue that plaintiff has failed to state a claim for copyright infringement in Count I. "To establish infringement" under the Copyright Act, "two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). "In any judicial proceeding the certificate of a registration made before or within five years after first publication of a work shall constitute *prima facie* evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c); *Monotype Imaging, Inc. v. Bitstream, Inc.*, 376 F. Supp. 2d 877, 884 (N.D. Ill. 2005) (same).

The Court finds that plaintiff has stated a copyright infringement claim. Plaintiff has provided *prima facie* evidence of the first element, copyright ownership, by attaching its registrations to the complaint (R. 38-6). Indeed, the Court has already found in deciding plaintiff's TRO motion that "Plaintiff is the owner of the copyrights" for the Maier works. R. 14 at 1. Plaintiff also has alleged that defendants infringed plaintiff's copyright—the second element of plaintiff's claim—through many acts of "copying of constituent elements of the work that are original." *Feist*, 499 U.S. at 361; *see* R. 38 ¶¶ 61-63.

Defendants do not meaningfully dispute these facts. Instead, they maintain that they have a "claim to ownership . . . based on the fact that the underlying works, the photographs, were transferred before Maier's death, making them not a part of the Estate." R. 42 at 7. This argument fails for two reasons. First, this Court

must accept the complaint's well-pleaded allegations as true for purposes of deciding this motion to dismiss, *Mann*, 707 F.3d at 877, and the complaint alleges that Goldstein did not begin acquiring Maier works until after her death. R. 38 ¶¶ 16, 23-25. Second, and more importantly, when Goldstein acquired negatives or other physical embodiments of the Maier works is irrelevant to the issue of copyright ownership. As Section 202 of the Copyright Act makes plain, "[o]wnership of a copyright . . . is distinct from ownership of any material object in which the work is embodied. Transfer of ownership of any material object, including the copy or phonorecord in which the work is first fixed, does not of itself convey any rights in the copyrighted work embodied in the object." 17 U.S.C. § 202; *Corcoran v. Sullivan*, 112 F.3d 836, 838 (7th Cir. 1997) (same). Even if it were true that Goldstein bought certain Maier works prior to her death, ownership of those works would not entitle him to the copyright or provide a defense to infringement. Defendants cite no authority to the contrary. Accordingly, plaintiff's copyright claim will proceed.

## III.    Count II – Equitable Easement

"In the alternative to [plaintiff's] claim under Count I that [the Maier] negatives should be impounded and forfeited to [plaintiff]," plaintiff requests in Count II "that the Court grant to the Estate an equitable easement against the physical objects embodying the Maier Works in Defendants' possession, custody or control." R. 38 at 13. Defendants argue that plaintiff's complaint presents no legal authority for this claim. But a plaintiff need not cite legal authority in a complaint

to state a valid claim. *E.g.*, *Gilmore v. Southwestern Bell Mobile Sys., LLC*, 224 F. Supp. 2d 1172, 1175 (N.D. Ill. 2002) ("in the complaint itself, it is unnecessary to specifically identify the legal basis for a claim as long as the facts alleged would support relief").

In its response to defendants' motion to dismiss, plaintiff explains that its equitable easement claim is based on *Community for Creative Non-Violence v. Reid*, 1991 WL 370138 (D.D.C. Oct. 16, 1991) ("*CCNV*"). In *CCNV*, the case had "remain[ed] in stalemate" because, after "agreement was reached confirming exclusive ownership of [an] original sculpture in [plaintiffs] . . . and acknowledging joint ownership [by plaintiffs and defendant] of the copyright for two-dimensional reproductions," plaintiffs refused to give defendant access to make a mold to exercise his reproduction rights. *Id.* at *1. The court determined that as a remedy for the stalemate, defendant was "entitled to a limited possessory right of his own, in the nature of an implied easement of necessity, to cause a master mold to be made of the sculpture, whereupon it shall be returned promptly to" the other party. *Id.* (citing Restatement of Property §§ 474-76); *see also Community for Creative Non-Violence v. Reid*, 1991 WL 378209 (D.D.C. Oct. 29, 1991) ("*CCNV II*") (superseding consent order). Plaintiff explains that the digitized versions of the Maier works that defendants have produced during discovery are not of sufficient quality to allow plaintiff to commercially reproduce them. R. 46 at 10. Plaintiff therefore argues that like in *CCNV*, plaintiff should be "entitled to access the works

in Defendants' possession, as those are the only existing embodiments of the works from which quality prints can be made." *Id.*

Of course, as defendants note, the equitable easement in *CCNV* was a remedy following a final consent judgment. 1991 WL 370138, at *1. But that is not a basis for dismissing a request for similar relief following a final judgment in this case. Defendants have provided no valid reason to dismiss Count II, which is really a request for an alternative remedy for the copyright infringement alleged in Count I in the event the Court finds it more appropriate.

## IV. Counts III-V: Lanham Act Claims

Defendants argue that plaintiff has failed to adequately plead its Lanham Act claims for: (1) trademark infringement under 15 U.S.C. § 1114(a)(1) (Count III); (2) false designation of origin under 15 U.S.C. § 1125(a) (Count IV); and (3) federal unfair competition under 15 U.S.C. § 1125(a) (Count V). "To prevail on a Lanham Act claim, a plaintiff must establish that (1) her mark is protectable, and (2) the defendant's use of the mark is likely to cause confusion among consumers." *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 638 (7th Cir. 2001).

Defendants first claim that plaintiff has not alleged facts to establish that it has a protectable mark. But plaintiff alleges that its mark is registered with the U.S. Patent and Trademark Office and is distinctive. R. 38 ¶¶ 22, 77-79, 84, 110. As defendants acknowledge, "[u]nder the Lanham Act, registration of a trademark creates a rebuttable presumption that the mark is valid." *Georgia-Pac. Consumer Prod. LP v. Kimberly-Clark Corp.*, 647 F.3d 723, 727 (7th Cir. 2011). Although that

presumption no longer applies when "evidence of invalidity is presented," *id.* (quotation marks omitted), defendants present no evidence of invalidity here. Nor is this the appropriate stage of the litigation to weigh evidence of invalidity.

Defendants further claim that plaintiff has not sufficiently alleged a likelihood of confusion. "Because the likelihood of confusion test is a fact-intensive analysis, it ordinarily does not lend itself to a motion to dismiss. Thus, the court's role at the motion to dismiss stage is limited to assessing whether [plaintiff] has pleaded facts that plausibly could result in a successful outcome on the likelihood of confusion element of its claim." *Slep-Tone Entm't Corp. v. Coyne*, 41 F. Supp. 3d 707, 715 (N.D. Ill. 2014) (internal citations and quotation marks omitted).

The Court finds that plaintiff has plausibly pleaded likelihood of confusion. Plaintiff has alleged that on defendants' vivianmaierprints.com website, defendants "featur[ed] a facsimile signature of Vivian Maier and the header 'Vivian Maier Prints, Inc.," in order "to give the false impression that it was the 'official' Maier website, and was approved, sponsored, or endorsed by Maier or her Estate." R. 38 ¶ 33. Plaintiff has also pleaded that defendants' domain name of vivianmaierprints.com "encompasses the Estate's identity and VIVIAN MAIER Mark in its entirety, along with the generic wording 'prints.' The domain name is also confusingly similar to the Estate's bona fide 'vivianmaier.com' domain name, which is registered to and is operated by its authorized agent." *Id.* ¶ 110. Based on the clear similarity between the VIVIAN MAIER mark and defendants' domain name, header, and facsimile signature on its website, as well as the alleged facts

surrounding defendants' creation and use of that website, the Court finds that plaintiff has alleged facts "that plausibly could result in a successful outcome on the likelihood of confusion element of its claim." *See Slep-Tone*, 41 F. Supp. 3d at 715; *see also, e.g.*, *Vulcan Golf, LLC v. Google Inc.*, 552 F. Supp. 2d 752, 762-766 (N.D. Ill. 2008) (plaintiff's allegations that plaintiff owns the "Vulcan Gulf" trademark and the "Vulcan Golf" tradename and that *vulcanogolf.com* violates plaintiff's trademark on that name state a claim at the motion to dismiss stage).

The only argument defendants make as to why plaintiff has not adequately pleaded likelihood of confusion is that plaintiff "has never made any attempt to use the mark in commerce." R. 42 at 9-10. But as defendants acknowledge, prior to plaintiff acquiring it, the mark was "used in commerce" by its prior owner as early as November 2010, and was registered in November 2011. *Id.* at 10. Defendants' allegedly infringing activities thus plausibly could have caused confusion among consumers at that time. *See Packman*, 267 F.3d at 638.

For these reasons, plaintiff's Lanham Act claims in Counts III-V will proceed.

## V.     Count IX: Cybersquatting Claim

Defendants next argue that plaintiff has not adequately pleaded a cybersquatting claim in Count IX. Congress enacted the Anticybersquatting Consumer Protection Act ("ACPA") "in 1999 to combat the deliberate, bad-faith, and abusive registration of Internet domain names in violation of the rights of trademark owners, a practice also known as cybersquatting." *Flentye v. Kathrein*, 485 F. Supp. 2d 903, 913-14 (N.D. Ill. 2007) (quotation marks omitted). "To state a

claim under the ACPA, a plaintiff must allege that (1) it had a distinctive or famous mark at the time the domain name was registered, (2) the defendant registered, trafficked in, or used a domain name that is identical or confusingly similar to plaintiff's mark, and (3) the defendant had a bad faith intent to profit from that mark." *Id.* at 914.

The Court finds that plaintiff has adequately alleged the first two elements. The complaint alleges that plaintiff had a distinctive mark at the time defendants' vivianmaierprints.com domain name was registered and that this domain name is "identical or confusingly similar" to plaintiff's mark. R. 38 ¶ 110. Defendants make no argument to the contrary.

Defendants contend that plaintiff's cybersquatting claim fails because plaintiff has not adequately alleged the third element of bad faith. The Court disagrees. A plaintiff "easily satisfie[s]" the requirement to allege bad faith "by explicitly alleging that Defendants registered the domain names in bad faith." *Flentye*, 485 F. Supp. 2d at 915 (citing *V'soske, Inc. v. Vsoske.com*, 2001 WL 546567, at *7 (S.D.N.Y. May 23, 2001) (denying motion to dismiss cybersquatting claim where "amended complaint specifically alleges that Dixon registered vsoske.com and vsoskejoyce.com in bad faith")). And plaintiffs have made an explicit allegation of bad faith here. R. 38 ¶ 111.

Defendants claim that plaintiff did not allege "that Defendants intended to divert customers from the Estate's website." R. 42 at 11. In fact, the complaint makes that precise allegation: "Defendants have used the domain name to divert

actual or potential customers away from the Estate's website to Defendants' own website at the 'vivianmaierprints.com.'" R. 38 ¶ 111. Defendants' further argument that "application of the statutory factors" confirms that they reasonably believed their use of the domain name to be fair and lawful is "unavailing at this early juncture." *See V'soske*, 2001 WL 546567, at *7. Plaintiff has adequately alleged a claim for cybersquatting.

## VI.    Count VI: Illinois Consumer Fraud and Deceptive Practices Act

In their motion to dismiss, defendants maintain that plaintiff failed to state a claim for deceptive practices under the Illinois Consumer Fraud and Deceptive Practices Act ("Consumer Fraud Act"). In its response, plaintiff explains that it believes it has stated a claim not for deceptive practices, but for unfair practices— an alternative type of claim under the Consumer Fraud Act. *See Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002) ("Recovery may be had for unfair as well as deceptive conduct."). Defendants in their reply disagree that plaintiff has stated an unfair practices claim.

"[T]hree considerations guide an Illinois court's determination of whether conduct is unfair under the Consumer Fraud Act: '(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers.'" *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 669-70 (7th Cir. 2008) (quoting *Robinson,* 775 N.E.2d at 961). "A court may find unfairness even if the claim does not satisfy all three criteria. For example, a practice may be unfair

because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Id.* (internal citation and quotation marks omitted).

Defendants say that plaintiff had to plead this cause of action "with the same particularity and specificity as common-law fraud." R. 50 at 7. Defendants are correct that specificity is required when pleading an unfair practices claim in Illinois state court. *See Windy City*, 536 F.3d at 670-72. But the same is not true in federal court. In *Windy City*, the Seventh Circuit explained that there is an "irreconcilable conflict" between the federal approach to pleading a claim under the Consumer Fraud Act and the state approach. *Id.* at 671. Applying the analysis prescribed in *Guaranty Trust—Hanna v. Plumer*, 380 U.S. 460 (1965), the *Windy City* court determined that the federal approach governs. 536 F.3d at 670-72. Under the federal approach, "a cause of action for unfair practices under the Consumer Fraud Act need only meet the notice pleading standard of Rule 8(a), not the particularity requirement in Rule 9(b). Therefore, under federal notice pleading standards, the complaint need only provide a short and plain statement of the claim that shows, through its allegations, that recovery is plausible rather than merely speculative." *Id.* at 670.

Here, plaintiff alleges that defendants' actions, including "adoption and use of the trademark 'VIVIAN MAIER' and their conduct suggesting to consumers that their activities are or were endorsed, affiliated with, or connected with Vivian Maier or her Estate misrepresent the nature of those goods and services and are likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or

approval of Defendants' services and therefore constitutes a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act" that has caused "irreparable injury to [plaintiff's] reputation and goodwill." R. 38 at 17. Like in *Windy City*, "[a]lthough the complaint does not use specifically the words 'immoral, unethical, oppressive, or unscrupulous,' it alleges conduct that, if proven, could support th[e] statutory definition of unfairness under the Consumer Fraud Act." *See* 536 F.3d at 672. That is all that is required at this stage. Plaintiff's Consumer Fraud Act claim for unfair practices will proceed.

## VII. Counts VII & VIII: Common Law Unfair Competition & Common Law Trademark Infringement

Defendants' only arguments for dismissing Count VII for common law unfair competition and Count VII for common law trademark infringement are that they duplicate other claims and fail for the same reasons. R. 42 at 14-15; R. 50 at 8-9. For the reasons explained above, the Court does not find that any of plaintiff's other claims fails as a matter of law.

As for duplicity, the Seventh Circuit has recognized that "[t]he Lanham Act and state common law are independent of each other." *Kohler Co. v. Moen Inc.*, 12 F.3d 632, 640 n.10 (7th Cir. 1993). Defendants fail to identify any case law to support their contrary position that federal and common law trademark claims are duplicative. With respect to unfair competition, plaintiff acknowledges that its common law unfair competition claim has the same elements as its Lanham Act trademark infringement claim. R. 46 at 14. But, as plaintiff correctly points out, courts have allowed such claims to be individually asserted. *See, e.g.*, *Top Tobacco v.*

*Fantasia Distribution Inc.*, 101 F. Supp. 3d 783, 788-92 (N.D. Ill. 2015) (denying motion to dismiss federal unfair competition, common law unfair competition, deceptive trade practice, and federal trademark infringement counts after recognizing that they each "'involve the same elements and proofs'") (quoting *KJ Korea, Inc. v. Health Korea, Inc.*, 66 F. Supp. 3d 1005, 1012 (N.D. Ill. 2014) (collecting cases)). The Court similarly declines to dismiss plaintiff's common law unfair competition claim here.

## Conclusion

For these reasons, defendants' motion to dismiss (R. 42) is denied.

ENTERED:

Honorable Thomas M. Durkin
United States District Judge

Dated: November 20, 2017